# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 20, 2014 Session

## BLAIN STEVEN COVERT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Campbell County**
**No. 15983   E. Shayne Sexton, Judge**

---

**No. E2013-02531-CCA-R3-PC - Filed September 16, 2014**

---

The State appeals the Campbell County Circuit Court's grant of post-conviction relief from the Petitioner's convictions for aggravated sexual exploitation of a minor and sexual exploitation of a minor and his effective ten-year sentence. The State contends that the trial court erred by granting the Petitioner relief because he failed to establish by clear and convincing evidence that he received the ineffective assistance of counsel. We have reviewed the trial court's decision granting post-conviction relief and conclude that the Petitioner failed to show that he received the ineffective assistance of counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

JOSEPH M. TIPTON, SP.J., delivered the opinion of the court, in which JEFFREY S. BIVINS, SP. J., joined. THOMAS T. WOODALL, P.J., filed a dissenting opinion.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Scarlett W. Ellis, Assistant District Attorney General, for the appellant, State of Tennessee.

J. Stephen Hurst, LaFollette, Tennessee, for the appellee, Blain Steven Covert.

## OPINION

The Petitioner was indicted for twenty-two counts of aggravated sexual exploitation of a minor and three counts of sexual exploitation of a minor. *See* T.C.A. § 39-17-1003, 39-17-1004 (2010). He pleaded guilty to aggravated sexual exploitation of a minor and sexual exploitation of a minor and received an effective ten-year sentence. The Petitioner filed a petition for post-conviction relief, alleging multiple grounds of the ineffective assistance of counsel. After an evidentiary hearing, the trial court granted post-conviction relief on the

ground that counsel provided ineffective assistance by not investigating the Petitioner's reported mental health problems, and the State appealed.

At the post-conviction hearing, Ben Walker, a relative of the Petitioner, testified that he was a retired Federal Bureau of Investigation (FBI) agent and that he met with counsel at the request of the Petitioner's grandmother. The meeting was held at counsel's office before the Petitioner pleaded guilty, and his grandmother attended. Mr. Walker said his role at the meeting was to help her understand the charges against the Petitioner.

Mr. Walker testified that counsel stated at the meeting that he had not "done discovery" because counsel was "too busy trying to negotiate the plea deal on two counts of the indictment." He told counsel that the Petitioner was "a young, stupid kid with mental health problems." He said the Petitioner's grandmother also told counsel at the meeting that the Petitioner received mental health care. On cross-examination, Mr. Walker testified that he knew the Petitioner was charged with four Class B felony offenses.

Linda Covert, the Petitioner's mother, testified that she met with counsel several times before the Petitioner entered his guilty pleas. She, the Petitioner's father, and his grandmother told counsel that the Petitioner was having mental health problems and that the Petitioner was receiving counseling and taking medications. She said that she provided counsel with a list of the Petitioner's counselors and their telephone numbers early in counsel's representation. She said that she raised the mental health issue each time she met with counsel.

Ms. Covert testified that counsel told her that he was going to investigate the Petitioner's mental health problems but that to her knowledge, counsel never obtained any documents from the counselors who evaluated and treated the Petitioner. She said that she came to court when the Petitioner entered his guilty pleas but that she was not expecting him to plead guilty. She said counsel showed the Petitioner the documents regarding the plea agreement. She heard the Petitioner tell counsel that he was not guilty and did not want to sign the plea agreement. She heard counsel tell the Petitioner that counsel would no longer represent him if he did not accept the plea offer.

Steven Covert, the Petitioner's father, testified that he met with counsel at counsel's office four times and that the Petitioner was present only once. He said the Petitioner maintained his innocence until he entered his guilty pleas. He confirmed Ms. Covert's testimony regarding counsel's being repeatedly told about the Petitioner's mental health history. He said counsel told him that he would "look into it." He said the Petitioner wanted to reject the plea offer and go to trial. He told counsel that if the Petitioner "signs it, it would

be under duress." On cross-examination, he stated that the Petitioner wanted a trial rather than to plead guilty because the Petitioner "didn't do the charges."

Brad Franks, a counselor at Helen Ross McNabb Center, testified that the Petitioner was treated on an outpatient basis approximately one month before entering his guilty pleas. He said the Petitioner sought medication for his depression. The Petitioner sought entry of his medical records, and the State objected. The trial court "conditionally" sustained the State's objection.

The prosecutor told the trial court,

Your Honor, I'm [going to] object to the introduction of these medical -- or these records. I think the witness can testify to anything he knows about [the Petitioner] any time he saw him and what his status was but not on anything other people told him, certainly not what [the Petitioner] told him.

Post-conviction counsel told the court,

The only thing I'm offering this for is that the -- I'll be very candid with the Court -- is that he authored the report. My client is going to testify about the contents [of the] report and the information he gave. . . . [O]ther than the fact that he reported, he's the author of the report which, as an expert in the field, he has an absolute right to do and rely on.

After further discussion, the trial court found that the records contained multiple declarants. It permitted Mr. Franks to review the records and "pick out the items that he ha[d] . . . prepared." The court stated, "Frankly, I don't know that he even has to do that. If he can testify without the paperwork, then that's fine. But I'm hesitant to let these come in for the purpose that they are being offered because . . . there's . . . multiple declarants[.]" After post-conviction counsel questioned Mr. Franks further, the court found that the records were inadmissible and ordered them to be placed under seal in the same manner in which they were presented to the court. We note that when questioned by the court, the Petitioner waived all rights to prevent disclosure of his medical records.

Mr. Franks testified that to his knowledge, post-conviction counsel was the only person who sought the Petitioner's medical records. He agreed he performed the evaluation and prepared the report and said only post-conviction counsel had talked to him about the Petitioner's condition or attempted to obtain the records.

Post-conviction counsel told the trial court that he wanted to present the medical records to the court because "they're here[] and never . . . sought by any person. Beyond the content my client would testify to, what he recorded, I would not offer any further proof beyond that limitation." The court stated,

> Well, if they are not being offered for the truth of the matter asserted, there's really no reason to have the substance in. This is quite voluminous. I mean we can - - it may be best to get what opinions that you may get from this witness, but putting this in carte blanche is not [going to] be permitted. Because I don't see any other way it can be for anything but for the truth of the matter asserted. I understand where you're going with it. That the issue should have been raised and it was not. It begs the question, do we go further. If . . . there is a substantial basis for a defense or for consideration of this type of information by competent trial counsel, then it really doesn't matter what's in it. It's clear that he's been treated.

Upon further discussion, the trial court was told the Petitioner entered his guilty pleas on February 6, 2012, and that the relevant treatment occurred in December 28, 2011. The prosecutor told the court that the Petitioner presented on an outpatient basis because he was depressed about the charges. The court stated that if counsel had the records, "we might go into the substance of them and what he did with them. He never asked for them. That's the point being made." The court stated that as a result, the substance of the records did not matter and that "[i]t might be a question for me at some point. I may . . . look at those in chambers and decide to what degree they may have made some difference." The court noted the relevant legal analysis to establishing an ineffective assistance of counsel claim was deficient performance and prejudice. The court found that the substance of the records and Mr. Franks's knowledge about the Petitioner were irrelevant. The court sustained the State's objection to the admission of the records and said, "I'm going to reseal it, and it will become part of my analysis down the line. . . . If I find that there is ineffectiveness, then I have to go further and look for prejudice."

On cross-examination, Mr. Franks testified that he was not the keeper of the records for the center. He agreed the Petitioner declined case management and therapy in December 2011.

Carolyn Hatfield, the Petitioner's grandmother, testified that she hired counsel to represent the Petitioner and that she told counsel about the Petitioner's mental health counseling and treatment. She said counsel never explained if and how he would use the information, although she asked counsel about the intended use. She said the Petitioner did not want to plead guilty and wanted a trial because he was innocent. She said she did not

-4-

know the Petitioner was going to plead guilty when she came to court on the day he entered his guilty pleas.

The Petitioner testified that he was twenty at the time of his arrest. He said he met with counsel at counsel's office once shortly after he was indicted. He said his parents and grandmother were present for the meeting. He agreed he met with counsel at the courthouse on other occasions. He said that at the first meeting, he told counsel that he was innocent and that his uncle, who lived with him, "had did the charges." He said that his family members told counsel about his mental health history and that he was undergoing counseling. He agreed he did not mention his mental health at the first meeting.

The Petitioner testified that about one month after counsel was hired, counsel told him "that there was a ten-year [plea offer] on the table." He said that he told counsel the offer was unreasonable and that he "wanted a different plea bargain." He said counsel told him the prosecutor would not offer a more lenient sentence. He said that at his mother's request, counsel asked the prosecutor to place him in a mental health facility upon conviction but that the prosecutor refused. He said that he refused the plea offer because the prosecutor refused the mental health facility request.

The Petitioner testified that although he pleaded guilty on February 6, 2012, he understood from talking with counsel that counsel would obtain "another postponement to discuss another plea bargain." He said counsel gave him the negotiated plea agreement papers when he arrived at the courthouse on February 6. He said that counsel told him, "[T]his is all we're gonna get," and that if he refused to accept the ten-year offer, he would receive "375 years" and counsel would terminate his representation.

The Petitioner testified that on the day he entered his guilty pleas, he told counsel about his mental health counseling again. He said counsel stated that "there was no way we could do anything about it." He told counsel when the charges were pending that he had received counseling since he was ten. He said he told counsel he was diagnosed recently with somatization disorder, bipolar disorder, and severe depression. He said counsel never investigated this information or reviewed medical records with him.

The Petitioner testified that counsel never suggested that he should have been evaluated to determine if he was competent to stand trial, although counsel had been told he was taking medication related to his mental health diagnoses. He said that he felt counsel provided ineffective assistance and that based on counsel's statement that counsel would stop representing him if he did not plead guilty, he believed he had no choice but to plead guilty. He thought he would have to go to trial without a lawyer if counsel withdrew. He said that because counsel was retained, he believed he would not be allowed to have appointed

counsel. He said that he probably would have gone to trial and not pleaded guilty if he had known he could have had appointed counsel. On cross-examination, he said he understood that if post-conviction relief was granted, he would have to face all twenty-seven counts in the indictment.

Counsel testified that he had practiced law for twenty-seven years and that he was hired and paid by the Petitioner's grandmother to represent the Petitioner. He said he met with the Petitioner and his family "a couple of times." He said that at a meeting before the plea offer was received in September 2011, he talked to the Petitioner alone at his office. He said that during the meeting, the Petitioner admitted he received and kept the child pornography and sent child pornography to other people. Counsel said that he advised the Petitioner to permit him to attempt to obtain a favorable plea agreement and that the Petitioner authorized him to talk to the prosecutor.

Counsel testified that he spoke to the Petitioner "multiple times" about the plea offer from the State, some of which were by telephone. He said that he told the Petitioner the offer was "a very good plea" and acknowledged that the Petitioner did not want to serve a sentence in confinement. He said that when they spoke, the Petitioner "was acclimated as to day, date, person present," and was lucid. He said he never had the impression that the Petitioner was "mentally incompetent or infirm." He said he believed the Petitioner was well aware "that he . . . got caught doing something wrong." He said they did not discuss the Petitioner's mental health, except at some point the Petitioner mentioned "that he had been seen by some people." He believed, though, that the Petitioner's statements never "rose to the level of something that would give [the Petitioner] a diminished capacity argument." He admitted he did not seek information from the Petitioner's mental health providers. He said the Petitioner only "appeared anxious about having to go to prison" and was scared.

Counsel testified that he talked with the Petitioner first, obtained the Petitioner's admission that he committed the offenses, and talked to the police investigator to determine if the State had sufficient evidence to convict him. He said he received information from the police investigator that the Petitioner deleted some of the evidence from his e-mail account after he was charged. He noted that this conduct was further proof that the Petitioner did not have a mental health problem preventing him from being aware of his conduct. He said that the Petitioner wanted an October 2011 court date continued because he did not want to plead guilty and be incarcerated at Christmas. He said that the Petitioner read the plea agreement and that he explained the details to the Petitioner. He denied that he threatened to end his representation if the Petitioner refused to accept the plea offer. He did not recall if he met or spoke on the telephone with a relative of the Petitioner who was a retired FBI agent, although he could not say he did not meet with the agent.

On cross-examination, counsel admitted that in cases like the Petitioner's in which exposure to many years of incarceration existed and in which the State made an "incredibly good offer," weakness in the State's case that could be exploited by the defense might exist. He admitted that once the Petitioner admitted committing the offenses, reaching a plea agreement was his focus.

Counsel testified that he did not interview any possible defense witnesses and that he interviewed only one State witness. He said the Petitioner "never made a significant issue of his mental capacity." He admitted, though, that at some point, the Petitioner's mother provided him with a list of the Petitioner's doctors and treatment facilities. He said he did not obtain any medical records because after talking with the Petitioner, he did not think the Petitioner "had a significant disease or defect that affected his cognitive abilities."

When asked if he believed a trial would have been a mistake in light of the favorable plea agreement, counsel testified

> I think that [the Petitioner] is an unmitigated fool to come here and try to set this plea aside and have a trial on all of these issues and expose himself to all the prison time that he's looking at. Because the things that you've described to me, bipolar, that does not take away the cognitive ability of a person to know right from wrong. The -- what you've described to me -- there's nothing that you've described to me that would lead to me to believe that this plea was not in his best interest. And . . . with all the information I had at hand, and even not talking to those providers because I wasn't told anything and he didn't act in any way that led me to believe . . . he had a mental issue that was significant enough to impair his ability to understand what he was charged with or make the plea, I . . . don't think it was the wrong thing to do. I didn't think it was then, and I don't think it was now.

Knoxville Police Investigator Mel Pierce testified that he was assigned to the Internet Crimes Against Children Task Force and that he was a forensic analyst. He said that counsel contacted him and that they discussed the State's evidence extensively. He said that when he initially spoke with the Petitioner at his home, the Petitioner was nervous but coherent and able to communicate. He said that in a later conversation, the Petitioner was able to explain how he deleted some of the evidence from an e-mail account and to provide passwords to various e-mail accounts.

The trial court found that the Petitioner "failed to establish with any credibility that trial counsel was deficient in exploring the proposed plea agreement." It found that counsel exercised a strategic decision to attempt to obtain the best negotiated plea possible because

no defense to the charges existed, in counsel's opinion. The court found that the Petitioner's assertion he was not "in his right mind" when he pleaded guilty was not credible.

Regarding counsel's failure to investigate the Petitioner's mental health, the trial court found that counsel's investigation was in pursuit of "the best deal [he] could possibly get" for the Petitioner. The court found counsel was deficient for not investigating the Petitioner's mental health problems further. Regarding prejudice to the Petitioner, the court stated,

> The second question then . . . is whether . . . there was . . . prejudice by that decision and without hesitation, the Court finds that there is. [T]his would be a great deal for anyone charged with this number of offenses if he's guilty. [The Petitioner] today has persisted with his was not guilty, and rather than -- I don't -- I'm not trying to establish [precedential] value. We can always go back and look at these. But with the mental state coupled with the outright -- outright denial, the Court is [going to] find that there is sufficient proof by the petitioner to set the plea -- to grant the relief requested which is find that there is ineffective assistance of counsel. . . .

This appeal followed.

The State contends that the trial court erred by granting post-conviction relief because the Petitioner failed to establish by clear and convincing evidence that counsel provided the ineffective assistance of counsel. The Petitioner responds that he received ineffective assistance. We conclude that the trial court erred by granting post-conviction relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the

petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

Regarding counsel's failure to investigate the Petitioner's mental health condition, the record reflects that counsel was informed of the Petitioner's mental health condition before the Petitioner entered his guilty pleas. The Petitioner's parents, his grandmother, and Mr. Walker each told counsel about the Petitioner's receiving mental health counseling and taking prescription medication. The Petitioner's mother provided counsel with a list of the Petitioner's counselors and their telephone numbers early in counsel's representation. The Petitioner testified that he told counsel on the day he entered his guilty pleas that he was recently diagnosed with somatization disorder, bipolar disorder, and severe depression. Although counsel was made aware of the Petitioner's mental health problems and concluded the Petitioner was competent, he admitted he did not obtain the relevant records or investigate the nature of the Petitioner's condition. The record does not preponderate against the trial court's finding that counsel was deficient by failing to investigate the Petitioner's mental health condition.

Regarding prejudice to the Petitioner, the Supreme Court has stated in similar circumstances that when a petitioner enters a guilty plea and

> the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel

is a failure to advise the [petitioner] of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Petitioner's medical records were received by the trial court under seal for the limited purpose of determining whether the Petitioner was prejudiced by counsel's performance. Because of the "conditional admissibility" of the medical records and our concluding that the record supports the trial court's finding counsel was deficient by not investigating the Petitioner's mental health, we have reviewed the records. Although the medical records support the Petitioner's and his family's assertion that the Petitioner received counseling and was prescribed medication, no evidence shows that the Petitioner's mental health condition would have affected his ability to enter a knowing and intelligent guilty plea. Without testimony to explain the information contained in the medical records, the effect of the records is neutral on the issue of prejudice in the post-conviction context.

We note that the dissenting opinion is concerned about this court's substituting its own judgment for the trial court's regarding witness credibility. We note, though, that the trial court made few explicit findings and that the dissenting opinion relies on its view that the trial court "implicitly found" facts. We agree with the dissenting opinion in that the witness testimony supports a finding that the Petitioner had mental health difficulties. The record, though, fails to show that had counsel obtained the Petitioner's mental health records, the basis of the Petitioner's ineffective assistance claim, that he would not have pleaded guilty. The Petitioner's claim of innocence at the post-conviction hearing viewed in conjunction with his mental health records does not support a finding a prejudice.

Likewise, no evidence exists showing that the Petitioner had viable grounds to present a diminished capacity or other affirmative defense. We note that counsel testified regarding the State's evidence against the Petitioner, his lengthy conservation with the investigating officer, and his conclusion that the plea offer was in the Petitioner's best interest. The Petitioner failed to show a reasonable probability existed that the Petitioner would not have pleaded guilty had counsel obtained the records. We, likewise, conclude that the Petitioner failed to show a reasonable probability that the mental health records would have changed the outcome of a trial had the Petitioner not pleaded guilty. As a result, the record fails to support the trial court's finding that the Petitioner was prejudiced by counsel's failure to investigate the Petitioner's mental health condition.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to enter an order denying post-conviction relief.

_____
JOSEPH M. TIPTON, SPECIAL JUDGE